CITY OF BARBERTON, APPELLEE, *v*. JENNEY, APPELLANT.

[Cite as *Barberton v. Jenney,* **126 Ohio St.3d 5, 2010-Ohio-2420.**]

*A police officer's unaided visual estimation of a vehicle's speed is sufficient evidence to support a conviction for speeding in violation of R.C. 4511.21(D) without independent verification of the vehicle's speed if the officer is trained, certified, and experienced in visually estimating vehicle speed.*

(No. 2009-1069 — Submitted February 17, 2010 — Decided June 2, 2010.)

APPEAL from the Court of Appeals for Summit County, No. 24423, 2009-Ohio-1985.

_____

SYLLABUS OF THE COURT

A police officer's unaided visual estimation of a vehicle's speed is sufficient evidence to support a conviction for speeding in violation of R.C. 4511.21(D) without independent verification of the vehicle's speed if the officer is trained, is certified by the Ohio Peace Officer Training Academy or a similar organization that develops and implements training programs to meet the needs of law-enforcement professionals and the communities they serve, and is experienced in visually estimating vehicle speed.

_____

O'CONNOR, J.

{¶ 1} In this appeal, we determine whether a police officer's unaided visual estimation of a vehicle's speed, by itself, is sufficient evidence of the vehicle's speed to support a conviction for speeding in violation of R.C. 4511.21(D). Appellant, Mark Jenney, argues that it is impossible for a police officer to visually estimate the exact speed of a moving object. He asks the court

to establish a bright-line rule that an officer's visual estimation of speed, without other evidence to support it, is insufficient to sustain a conviction for speeding.

{¶ 2}    A rational trier of fact could find testimony by a police officer who is trained, certified by the Ohio Peace Officer Training Academy ("OPOTA") or a similar organization, and experienced in visually estimating vehicle speed that he estimated a vehicle's speed to be in excess of the posted limit sufficient evidence to establish a violation of R.C. 4511.21(D) beyond a reasonable doubt.   We therefore hold that a police officer's unaided visual estimation of a vehicle's speed is sufficient evidence to support a conviction for speeding in violation of R.C. 4511.21(D) without independent verification of the vehicle's speed if the officer is trained, is certified by the Ohio Peace Officer Training Academy or a similar organization that develops and implements training programs to meet the needs of law-enforcement professionals and the communities they serve, and is experienced in visually estimating vehicle speed.

### Relevant Background

{¶ 3}    On July 3, 2008, Officer Christopher R. Santimarino was in a marked patrol car running stationary radar at southbound traffic on State Route 21 in Copley Township, Ohio.  The posted speed limit in that location is 60 miles per hour.  Santimarino observed Jenney driving a black SUV in the left lane of Route 21 in moderate to heavy traffic.   Santimarino determined that Jenney was traveling faster than the posted speed limit, initiated a traffic stop, and issued Jenney a citation for traveling 79 miles per hour in a 60-mile-per-hour zone in violation of R.C. 4511.21.[1]

---

1. In issuing the citation, Santimarino inadvertently failed to check any of the boxes specifying under which subsection Jenney was charged, but the trial court permitted the state to amend the citation to allege that Jenney violated both R.C. 4511.21(A) (operating a motor vehicle at a greater speed than is reasonable and proper under the circumstances) and 4511.21(D)(6) (operating a motor vehicle at a speed exceeding the posted speed limit).  On appeal, the Ninth District Court of Appeals affirmed the trial court's grant of the city's motion to amend the citation. *Barberton v. Jenney*, Summit App. No. 24423, 2009-Ohio-1985, 2009 WL 1139347, ¶ 4.  We declined to

{¶ 4}   The case proceeded to trial in the Barberton Municipal Court.

{¶ 5}   At trial, Santimarino testified that he had been employed as a patrolman with the Copley Police Department for 13 years.  He testified that he was certified by OPOTA and had been working in traffic enforcement since 1995. Santimarino testified that as part of his OPOTA training, he was trained to visually estimate the speed of a vehicle.  In order to be certified by OPOTA, Santimarino was required to show that he could visually estimate a vehicle's speed to within three to four miles per hour of the vehicle's actual speed, which he did.  Further, Santimarino testified that since becoming a police officer in 1995, he had performed hundreds of visual estimations.  Santimarino testified that based on his training and experience, he had estimated that Jenney's vehicle was traveling 70 miles per hour on July 3, 2008.

{¶ 6}   Santimarino also testified that in addition to his training and experience in visually estimating vehicle speed, he was trained and certified to use the Python brand Doppler radar unit that he was using on July 3, 2008. Santimarino testified on direct examination that after he visually estimated the speed of Jenney's vehicle, he observed that the radar unit indicated that Jenney's vehicle was traveling at 82 miles per hour.[2]  Santimarino could not produce a copy of his radar-training certification when defense counsel requested he do so on the day of trial.

{¶ 7}   Santimarino also testified that Jenney was traveling at an unreasonable speed for the conditions, given the other traffic in close proximity to his vehicle.

---

review Jenney's proposition relating to the amendment.  *Barberton v. Jenney*, 123 Ohio St.3d 1406, 2009-Ohio-5031, 914 N.E.2d 204.

2.  Santimarino testified on cross-examination that the radar unit indicated that Jenney's vehicle was traveling at 83 miles per hour.  This difference is immaterial to our analysis.

{¶ 8} In light of both his visual estimation and the radar reading, Santimarino initiated a traffic stop and issued Jenney a citation for traveling 79 miles per hour in a 60 mile per hour zone in violation of R.C. 4511.21. Santimarino testified that he reduced the rate of speed to 79 miles per hour to "give [Jenney] a break on the personal appearance in court," which is required for speeds 20 miles per hour or more over the speed limit.

{¶ 9} At the conclusion of the city's case, Jenney moved for an acquittal pursuant to Crim.R. 29, arguing that the city had failed to meet its burden of proof. The trial court overruled Jenney's motion. Jenney then testified that before he was pulled over, he had been traveling in the right lane of traffic, not the left lane as Santimarino had testified, and that he had been traveling at the speed limit, 60 miles per hour.

{¶ 10} The trial judge found Jenney guilty of traveling over the posted speed limit. Based on Santimarino's visual estimation, which the trial court found to be his "strongest" testimony, the court amended the citation to state that Jenney had been traveling 70 miles per hour in a 60-mile-per-hour zone and imposed a $50 fine plus court costs.

{¶ 11} Jenney appealed his conviction to the Ninth District Court of Appeals, arguing that the trial court had erroneously permitted the city to amend the traffic citation and that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. Jenney argued that the radar results were not admissible because the city had failed to establish a proper foundation for admission. Jenney maintained that without the radar results, the city had failed to present sufficient evidence of his speed and his conviction could not stand. The court of appeals held that because Santimarino could not produce his certificate to operate the radar unit on the day of trial, the state had not proved that he was qualified to operate the radar unit and the trial

court had erred in permitting him to testify regarding the radar results.[3] Id., ¶ 8. However, the Ninth District held that the admission of Santimarino's testimony regarding the radar results was harmless error because his visual estimation of the vehicle's speed was sufficient to support Jenney's conviction. Id., ¶ 9.

{¶ 12} We accepted review of Jenney's discretionary appeal to determine whether a police officer's unaided visual estimation of a vehicle's speed, by itself, is sufficient to support a conviction for violation of R.C. 4511.21(D). *Barberton v. Jenney*, 123 Ohio St.3d 1406, 2009-Ohio-5031, 914 N.E.2d 204. We hold that a police officer's unaided visual estimation of a vehicle's speed is sufficient evidence to support a conviction for speeding in violation of R.C. 4511.21(D) without independent verification of the vehicle's speed if the officer is trained, is certified by the Ohio Peace Officer Training Academy or a similar organization that develops and implements training programs to meet the needs of law-enforcement professionals and the communities they serve, and is experienced in visually estimating vehicle speed.

### Analysis

{¶ 13} The trial court found appellant guilty of "traveling over the speed limit." Pursuant to R.C. 4511.21(D)(6), "[n]o person shall operate a motor vehicle * * * upon a street or highway * * * [a]t a speed exceeding the posted speed limit * * *." Jenney does not dispute that he was operating a motor vehicle on a street or highway and that the posted speed limit was 60 miles per hour. The only element of the offense that Jenney challenges as not supported by sufficient evidence is the speed at which he was driving.

{¶ 14} " ' "[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the

---

3. The city did not appeal the Ninth District's decision that the radar results were inadmissible. Because the issue is not before us, we do not consider whether Santimarino's testimony regarding his training and certification in operating the radar unit was sufficient evidence to prove that he was qualified to operate the unit.

evidence is legally sufficient to support the jury verdict as a matter of law.' " *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed.1990) 1433. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." Id. In reviewing a challenge to the sufficiency of the evidence, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 113, quoting *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 15} "Visual observation has long been held a valid means of determining the speed of a moving vehicle as long as the witness has a reliable opportunity to view the vehicle." *State v. Harkins* (Aug. 5, 1987), 4th Dist. No. 431, 1987 WL 15492, at *3. A majority of the appellate districts that have considered the issue have held that an officer's testimony that in his opinion, a defendant was traveling in excess of the speed limit is sufficient to sustain a conviction for speeding. *Kirtland Hills v. Logan* (11th Dist.1984), 21 Ohio App.3d 67, 69, 21 OBR 71, 486 N.E.2d 231; *State v. Dawson*, 5th Dist. No. 03-COA-061, 2004-Ohio-2324, ¶ 21-23; *Cincinnati v. Dowling* (1st Dist.1987), 36 Ohio App.3d 198, 199-200, 521 N.E.2d 1140; *State v. Gellenbeck*, 12th Dist. No. CA2008-08-030, 2009-Ohio-1731, 2009 WL 975746, ¶ 19-20; *Columbus v. Bravi* (Mar. 5, 1991), 10th Dist. No. 90AP-1135, 1991 WL 33095; *State v. Wilson* (Nov. 20, 1996), 9th Dist. No. 95CA006285, 1996 WL 668993, at *1. In so holding, many of these courts have considered the testifying officer's training and experience visually estimating vehicle speed. *Dawson* at ¶ 21-23 (noting that the trooper had received training at the Ohio Highway Patrol Academy on how to accurately estimate the speed of moving vehicles, had passed the test at the

academy, and had been a trooper for four and a half years); *Dowling* at 199-200 (noting that the officer was trained in visually estimating vehicle speed and had 29 years of experience); *Gellenbeck* at ¶ 19-20 (noting that the trooper testified regarding his training to accurately visually estimate vehicle speed); *Kirtland Hills* at 69 (noting that the officer's testimony regarding his visual estimation was based on his knowledge and expertise).

{¶ 16} Jenney relies on decisions by the Second, Third, and Eighth Districts to support his argument that an officer's visual estimation of a vehicle's speed, alone, is insufficient to support a conviction pursuant to R.C. 4511.21(D). *See Middleburg Hts. v. Campbell*, 8th Dist. No. 87593, 2006-Ohio-6582, 2006 WL 3630780; *State v. Saphire* (Dec. 8, 2000), 2d Dist. No. 2000 CA 39, 2000 WL 1803852; *State v. Meyers* (Dec. 29, 2000), 2d Dist. No. 2000 CA 49, 2000 WL 1879104; *State v. Westerbeck* (June 19, 1987), 3d Dist. No. 17-86-18, 1987 WL 13063.

{¶ 17} The Eighth District held that an officer's visual estimation of a vehicle's speed, alone, is insufficient to support a conviction for speeding, stating that "the mere educated guess of the arresting officer as to the speed of a vehicle is insufficient to overcome the presumption of innocence and the burden of proof beyond a reasonable doubt for conviction." *Campbell*, 2006-Ohio-6582, ¶ 15.

{¶ 18} Although Jenney's reliance on the Eighth District's decision in *Campbell* is sound, his reliance on the Second District's decisions in *Saphire* and *Meyers* and the Third District's decision in *Westerbeck* is misplaced. After its decisions in *Saphire* and *Meyers*, the Second District held that testimony regarding an officer's visual estimation of speed, alone, may be sufficient to support a conviction for speeding upon an adequate showing of the officer's training and ability to accurately visually estimate the speed of vehicles. *State v. Konya*, 2d Dist. No. 21434, 2006-Ohio-6312, 2006 WL 3462119, ¶ 7-8, 14. In *Konya*, the court held that based on the trooper's 12 years of experience in law

enforcement and extensive training in visually estimating the speed of vehicles, along with the fact that he had had an unobstructed view of the vehicle in question for more than a mile, his testimony was sufficient, in and of itself, to establish the defendant's speed. Id. Similarly, the Third District recently explained that its decision in *Westerbeck* is limited to cases in which the officer's testimony is "too vague and indefinite for a finding of guilt," stating that courts that have interpreted *Westerbeck* as holding that visual-estimation testimony is insufficient as a matter of law have misconstrued its holding. *State v. Harris*, 3d Dist. No. 9-09-03, 2009-Ohio-2616, 2009 WL 1579250, ¶ 13, fn. 3.

{¶ 19} The Eighth District stands alone in holding that an officer's visual estimation of the speed of a vehicle is insufficient to support a finding of guilt, and we agree with the courts that have found the opposite. Rational triers of fact could find a police officer's testimony regarding his unaided visual estimation of a vehicle's speed, when supported by evidence that the officer is trained, certified by OPOTA or a similar organization, and experienced in making such estimations, sufficient to establish beyond a reasonable doubt the defendant's speed. Independent verification of the vehicle's speed is not necessary to support a conviction for speeding.

{¶ 20} The officer's credibility remains an issue for the trier of the facts. *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 120, quoting *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. "Because the trier of fact sees and hears the witnesses and is particularly competent to decide 'whether, and to what extent, to credit the testimony of particular witnesses,' we must afford substantial deference to its determinations of credibility." *Konya*, 2006-Ohio-6312, ¶ 6, quoting *State v. Lawson* (Aug. 22, 1997), 2d Dist. No. 16288, 1997 WL 476684, *4.

{¶ 21} At the time of the traffic stop, Santimarino had been employed as a patrolman with the Copley Police Department for 13 years. He is trained to

8

visually estimate vehicle speed to within three to four miles per hour of the vehicle's actual speed, he is certified by OPOTA in visually estimating vehicle speed, and he has performed hundreds of visual estimations since becoming a police officer in 1995. Santimarino testified that based on his training and experience, he visually estimated that Jenney was traveling 70 miles per hour at the time of the traffic stop. Santimarino's testimony was sufficient to support Jenney's conviction for traveling at a speed above the posted limit in violation of R.C. 4511.21(D). Further, the trial court found Santimarino's testimony credible and based its finding of guilt on the officer's visual estimation, noting that his testimony on the estimated speed was his "strongest" testimony.

{¶ 22} Given Santimarino's training, OPOTA certification, and experience in visually estimating vehicle speed, his estimation that Jenney was traveling 70 miles per hour was sufficient to support Jenney's conviction for driving over the posted speed limit of 60 miles per hour in violation of R.C. 4511.21(D).

## Conclusion

{¶ 23} A police officer's unaided visual estimation of a vehicle's speed is sufficient evidence to support a conviction for speeding in violation of R.C. 4511.21(D) without independent verification of the vehicle's speed if the officer is trained, is certified by the Ohio Peace Officer Training Academy or a similar organization that develops and implements training programs to meet the needs of law-enforcement professionals and the communities they serve, and is experienced in visually estimating vehicle speed. Given Santimarino's training, OPOTA certification, and experience in visually estimating vehicle speed, his estimation that Jenney was traveling at 70 miles per hour was sufficient to support a conviction for driving over the posted speed limit of 60 miles per hour in violation of R.C. 4511.21(D). We therefore affirm the judgment of the court of appeals and uphold Jenney's conviction and fine.

Judgment affirmed.

PFEIFER, LUNDBERG STRATTON, LANZINGER, and CUPP, JJ., concur.

O'DONNELL, J., dissents.

BROWN, C.J., not participating.

_____

**O'DONNELL, J., dissenting.**

**{¶ 24}** I respectfully dissent.

**{¶ 25}** While a police officer who is trained, certified by the Ohio Peace Officer Training Academy, and experienced in estimating a vehicle's speed may, as any other expert witness, offer an opinion of the speed of a moving vehicle during testimony in a court proceeding, I do not agree that such testimony per se is sufficient evidence to support a conviction for speeding. Like any other witness, a police officer's credibility is to be determined by the jury or other fact-finder. *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 120, quoting *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus (" '[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts' "). In fact, jury instructions given regularly by trial judges advise that a jury is privileged to believe all, part, or none of the testimony of any witness. See, e.g., *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, 781 N.E.2d 980, ¶ 120 (citing jury instruction stating that jurors may believe or disbelieve all or any part of the testimony of any witness).

**{¶ 26}** Thus, I would assert that a broad standard as postulated by the majority that a trained, certified, and experienced officer's estimate of speed is sufficient evidence to support a conviction for speeding eclipses the role of the fact-finder to reject such testimony, and thus such testimony, if found not to be credible, could, in some instances, be insufficient to support a conviction.

_____

Michelle Banbury, City of Barberton Law Department Assistant Prosecuting Attorney, for appellee.

John Kim, for appellant.

Richard Cordray, Attorney General, Benjamin C. Mizer, Solicitor General, and Emily S. Schlesinger, Deputy Solicitor, urging affirmance for amicus curiae, Ohio Attorney General.

_____