[Cite as *State v. Phillips*, 2019-Ohio-2460.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                    :
                                  :
    Plaintiff-Appellee,           :        Case No. 18CA3667
                                  :
vs.                               :
                                  :        <u>DECISION AND</u>
JOHN W. PHILLIPS,                 :        <u>JUDGMENT ENTRY</u>
                                  :
    Defendant-Appellant.          :
_____

<u>APPEARANCES:</u>

Timothy Young, Ohio Public Defender, and Allen Vender, Assistant State Public Defender, Columbus, Ohio, for Appellant.

Sherri K. Rutherford, Law Director, and Pamela C. Wells, Assistant Law Director, Chillicothe, Ohio, for Appellee.
_____

Smith, P. J.

{¶1} Appellant, John W. Phillips, appeals his conviction for OVI, an unclassified misdemeanor in violation of R.C. 4511.19(A)(1)(a). On appeal, Appellant contends that the trial court violated his rights to due process and a fair trial when it entered a judgment of conviction for operating a vehicle under the influence of alcohol against the manifest weight of the evidence. After a careful review of the record, we conclude that Appellant's sole assignment of error is without merit. Accordingly, we affirm the judgment of the trial court.

FACTS

{¶2} Appellant, John W. Phillips, was arrested and charged with OVI in violation of R.C. 4511.19(A)(1)(a), an unclassified misdemeanor by virtue of the fact that Appellant had been convicted of two prior OVIs in the previous ten year period.[1] Appellant's OVI charge stemmed from an incident involving the stop of his vehicle by a Department of Veterans Affairs police officer on federal property owned by the department. A review of the record reveals that the stop was initiated after Appellant pulled out of his apartment building parking lot onto a main road, making a wide turn and crossing the center line. After further observing Appellant go off the right side of the road, cross the center line again, and then go off the right side of the road and turn into the grass, all while driving ten m.p.h. in a twenty m.p.h. zone, Officer McGoye stopped Appellant's vehicle. Because McGoye, as well as a Veterans Affairs lieutenant who responded as backup, and a state highway patrol trooper who took over the investigation all believed Appellant to be under the influence of alcohol, Appellant was arrested and charged with OVI. Trooper Chris Finley, who testified on behalf of the State, is the state trooper who ultimately arrested Appellant based upon the presence of an odor of alcohol on Appellant's person, his admission to drinking one beer two

---

[1] See R.C. 4511.19(G)(1)(c) with effective date of April 6, 2017.

hours prior, the fact that Appellant had bloodshot and glassy eyes, as well as his performance on field sobriety tests and other divided attention tests.

{¶3} Appellant initially pled not guilty to the charge but then filed a motion to file a written plea out of rule, stating that a plea of not guilty by reason of insanity was appropriate in this matter and requesting a competency evaluation be performed. Appellant's motion was granted. However, after two different competency evaluations determined Appellant was competent to stand trial, Appellant stipulated to the test results and the matter moved forward to a jury trial, which was held on August 28, 2018.

{¶4} Officer McGoye, now a Ross County Deputy Sheriff, testified on behalf of the State, as did Deputy Chief Efaw, who was a lieutenant at the time. Both of these men were employed with the Department of Veterans Affairs police force at the time of Appellant's traffic stop and arrest. Their testimony regarding Appellant's driving, appearance and demeanor, and performance on field sobriety tests and divided attention tests will be discussed in detail below. Appellant rested his case without presenting any evidence or testimony. The jury ultimately found Appellant guilty as charged and because it was Appellant's third OVI in ten years he was sentenced to, among other things, thirty days in jail, an eight hundred fifty dollar fine, a two-year license suspension and forfeiture of his vehicle. Appellant

now brings his timely appeal, setting forth a single assignment of error for our review.

ASSIGNMENT OF ERROR

I.       "THE TRIAL COURT VIOLATED JOHN PHILLIPS'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF CONVICTION FOR OPERATING A VEHICLE UNDER THE INFLUENCE OF ALCOHOL AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶5} In his sole assignment of error Appellant contends his conviction for OVI was against the manifest weight of the evidence. Appellant argues that no evidence was presented regarding a breathalyzer or other measure of his blood-alcohol concentration, and that the evidence at trial reflected a reasonable doubt that he was impaired. The State contends it did not introduce breathalyzer results or other evidence of Appellant's blood-alcohol concentration because Appellant was not charged with a per se violation, but rather was simply charged with operating a vehicle while under the influence of alcohol. The State further contends that testimony from three officers indicated Appellant was under the influence of alcohol.

{¶6} When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence and all reasonable inferences, and consider the witness credibility. *State v. Dean*, 146 Ohio St.3d 106, 2015–Ohio–4347, 54 N.E.3d 80,

¶ 151; citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. "Because the trier of fact sees and hears the witnesses and is particularly competent to decide 'whether, and to what extent, to credit the testimony of particular witnesses,' we must afford substantial deference to its determinations of credibility." *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20; quoting *State v. Konya*, 2nd Dist. Montgomery No. 21434, 2006–Ohio–6312, ¶ 6; quoting *State v. Lawson*, 2nd Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). As the court explained in *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, at ¶ 21:

> [I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment must be made in favor of the judgment and the finding of facts. * * *
> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment. *Id.* at ¶ 21, 972 N.E.2d 517, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d

1273 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate

Review, Section 60, at 191–192 (1978).

Thus, an appellate court will leave the issues of weight and credibility of the

evidence to the fact-finder, as long as a rational basis exists in the record for its

decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282,

¶ 24; *accord State v. Howard*, 4th Dist. Ross No. 07CA2948, 2007–Ohio–6331,

¶ 6 ("We will not intercede as long as the trier of fact has some factual and rational

basis for its determination of credibility and weight.").

{¶7} Once the reviewing court finishes its examination, the court may

reverse the judgment of conviction only if it appears that the fact-finder, when

resolving the conflicts in evidence, "clearly lost its way and created such a

manifest miscarriage of justice that the conviction must be reversed and a new trial

ordered ." *Thompkins* at 387; quoting *State v. Martin*, 20 Ohio App.3d 172, 175,

485 N.E.2d 717 (1st Dist.1983).  If the prosecution presented substantial credible

evidence upon which the trier of fact reasonably could conclude, beyond a

reasonable doubt, that the essential elements of the offense had been established,

the judgment of conviction is not against the manifest weight of the evidence.

*E.g., State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132, syllabus (1978), superseded

by state constitutional amendment on other grounds in *State v. Smith*, 80 Ohio

St.3d 89, 684 N.E.2d 668 (1997).  *Accord Eastley* at ¶ 12; quoting *Thompkins*, 78

Ohio St.3d at 387; quoting Black's Law Dictionary 1594 (6th ed.1990) (explaining that a judgment is not against the manifest weight of the evidence when "the greater amount of credible evidence" supports it).  Thus, "[w]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony."  *State v. Cooper*, 170 Ohio App.3d 418, 2007–Ohio–1186, 867 N.E.2d 493, ¶ 17; quoting *State v. Mason*, 9th Dist. No. 21397, 2003–Ohio–5785, ¶ 17; quoting *State v. Gilliam*, 9th Dist. Lorain No. 97CA006757 (Aug. 12, 1998).  Instead, a reviewing court should find a conviction against the manifest weight of the evidence only in the "exceptional case in which the evidence weighs heavily against the conviction."  *Thompkins* at 387; quoting *Martin* at 175.  *Accord State v. Lindsey*, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

{¶8} Here, the jury convicted Appellant of one count of OVI in violation of R.C. 4511.19(A)(1)(a), which provides that "[n]o person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them."  A review of the record indicates the State presented ample evidence that Appellant was operating his vehicle under the influence of alcohol at the time his vehicle was stopped.  For instance, Deputy Sheriff Zachary McGoye, who was a Veterans Affairs police officer at the time and who initiated the traffic stop,

testified at trial.  He testified that he stopped Appellant's vehicle after he observed

him make a wide turn out of a parking lot, which resulted in him crossing the

center line.  He then observed Appellant go off the right side of the roadway,

correct, cross the center line again, and then veer off the right side of the roadway

again and pull into the grass.  He also testified that Appellant was traveling only

ten m.p.h. in a twenty m.p.h. zone.[2]  Deputy McGoye testified that upon

approaching Appellant he immediately noticed the distinct odor of alcohol, that

Appellant's eyes were red and watery, and that his speech was slurred and uneven.

He testified Appellant stated he had one beer about two hours prior.  He also

testified that Appellant was fumbling and dropping things while trying to provide

his license and registration, and instead kept handing him receipts.

{¶9} Deputy McGoye further testified that field sobriety testing he

performed on Appellant indicated impairment from alcohol, despite Appellant's

claim that his equilibrium had been affected from a prior head injury.  He testified

that the tests were conducted in accordance with National Highway Traffic Safety

Administration (hereinafter "NHTSA") standards.  More specifically, he testified

he observed four of six clues when administering a Horizontal Gaze Nystagmus

(hereinafter "HGN") test, which indicated impairment.  He also testified that he

---

[2] Deputy McGoye explained during his testimony there was no video of his initial stop or testing of Appellant because the Department of Veterans Affairs vehicles, which patrol on medical center property, are not equipped with cameras due to "HIPAA" (Health Insurance Portability and Accountability Act) privacy concerns.

observed four out of four possible clues on the one leg stand test and four clues on

the walk and turn test, which also indicated impairment. He clarified during cross

examination that although he did not include in his report the fact that Appellant

was unsteady on his feet and was stumbling around, he was 100% certain at the

time of trial that Appellant was stumbling to the extent he had to have him sit

under a tree so as to avoid him falling down or stumbling into the road.

{¶10} Deputy Chief Brian Efaw, who was a lieutenant with the Department

of Veterans Affairs Police Department at the time, also testified at trial. He

testified he responded to assist McGoye and watched Appellant's performance on

the field sobriety testing. He testified that he was able to detect an odor of

alcoholic beverage coming from Appellant's person, that Appellant's speech was

slurred at the time the field sobriety tests were started, and that Appellant was not

following instructions during the testing. Based upon his belief that Appellant was

intoxicated and was under the influence of alcohol, Deputy Chief Efaw made the

decision to call the State Highway Patrol for assistance.

{¶11} Ohio State Highway Patrol Trooper Chris Finley testified at trial as

well. He testified that upon arrival he was briefed by both McGoye and Efaw. He

testified that because there was no video of the field sobriety tests already

performed, he chose to conduct additional field sobriety testing, which he

conducted in accordance with NHTSA standards. He testified that upon making

contact with Appellant he too noticed an odor of alcoholic beverage coming from his person, and that his eyes were bloodshot and glassy. He testified that Appellant advised him he had had one beer, was taking blood pressure medication and an anti-depressant, and that he had been hit in the head with a pole in the past, which affected his equilibrium and caused his balance to be off.

{¶12} As a result, Trooper Finley first administered a preliminary test to check for "resting nystagmus" and "equal tracking" before moving on to field sobriety testing. He testified that because that testing revealed no cause for concern, he then performed an HGN test upon Appellant, which resulted in the observance of four of six clues, indicating impairment. He testified that although Appellant initially agreed to attempt the one leg stand and walk and turn tests, he then refused to follow instructions while attempting them, resulting in Trooper Finley not being able to score them.[3] As a result, Trooper Finley administered three additional tests, referred to as "divided attention tests." These tests are usually only administered when physical tests cannot be performed, and include a modified Romberg test, a finger touch test and a finger to nose test. Trooper Finley explained that based upon his testing and his contact with Appellant, he was very certain Appellant was impaired by alcohol at the time.

---

[3] A video of these tests was played for the jury and has been reviewed by this Court.

{¶13} In light of the foregoing testimony, we cannot say the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. The jury was in the best position to hear the testimony, observe the witnesses and evidence, and determine their reliability. Thus, we hold that the jury's finding that Appellant was guilty of OVI was not against the manifest weight of the evidence. Accordingly, Appellant's sole assignment of error is overruled, and the decision of the trial court is affirmed.

**JUDGMENT AFFIRMED**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Abele, J.:  Concur in Judgment and Opinion.

For the Court,


BY:  _____
Jason P. Smith, Presiding Judge

### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**