[Cite as *State v. Roland*, 2021-Ohio-4077.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-210299 | |
| | | C-210300 | |
| Plaintiff-Appellee, | : | TRIAL NOS. B-1901497 | |
| | | B-2004037 | |
| vs. | : | | |
| FERNANDO ROLAND, | : | | |
| | | *O P I N I O N.* | |
| Defendant-Appellant. | : | | |

Criminal Appeals From:  Hamilton County Court of Common Pleas

Judgments Appealed From Are:  Affirmed

Date of Judgment Entry on Appeal:  November 17, 2021

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Timothy J. McKenna*, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1}   Fernando Roland appeals his conviction for domestic violence after a bench trial.  Raising four assignments of error, Roland contends that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence, he was denied the effective assistance of counsel, and the imposition of consecutive sentences was not supported by the record.  For the following reasons, we affirm the trial court's judgment.

### Factual Background

{¶2}   In 2019, Fernando Roland pleaded guilty to domestic violence, a felony of the fourth degree, in the case numbered B-1901497.  Roland was sentenced to three years of community control.  The court informed Roland that if he violated the conditions of community control, he would be sentenced to 18 months in prison.

{¶3}   On August 20, 2020, Roland was indicted in the case numbered B-2004037 for domestic violence, a felony of the fourth degree, for causing physical harm to Cierra Polk, a family or household member.  Roland's probation officer filed two community-control violations in the case numbered B-1901497, one for the police contact for the new domestic-violence charge, and one for failing to provide an accurate address.

{¶4}   Roland pleaded not guilty to the new domestic-violence charge and proceeded to a bench trial.  At trial, the theory of defense was that Roland and Polk were not household members, so he could only be convicted of a misdemeanor assault.  To establish that the two were household members, the state relied on the testimony of Polk, text messages that Roland sent to Polk, and two letters that Roland sent to Polk while he was in jail awaiting trial.

{¶5}    Polk testified that Roland was her ex-boyfriend, who had been living with her in her apartment from April or May of 2020 until the incident in August 2020.  He slept there every night and kept his clothing, toothbrush, shoes, jewelry, and other personal items at her home.  About a month or two after Roland's arrest, his mother came to the apartment and retrieved his belongings.  Polk stated that they shared bills; she paid the rent, and he paid for the internet and cell phones.  Polk also relayed a text conversation where Roland referred to her apartment as "home" and suggested that they purchase a mattress together.  The text messages were admitted into evidence.

{¶6}    While in jail, Roland sent Polk two letters.  In one letter, he expressed that he missed "waking up next to [her]," "looking at [her] sleep," "watching [her] cook," and walking in on her in the bathroom.  Roland also affirmed that he still wished to marry her and buy her a car when he was released.  Roland referred to himself as "her husband."

{¶7}    Polk further testified that she left work at 7 a.m. that morning and was driven home by a male coworker.  On the way home, they stopped at a store where she purchased a bottle of wine and a bottle of Long Island Iced Tea.  When she arrived home, Roland repeatedly questioned her about the male coworker who brought her home.  The two drank both bottles, so Roland went to the store to purchase more alcohol.  Before he left, Polk had gone outside to sit in front of the building to get away from him.

{¶8}    When Roland returned from the store, he asked her to return to the apartment and assured her that he would not put his hands on her.  When they reached the living room, he began hitting her on the back of her neck with an open

hand. At some point, he took her phone. Polk went to bed, and, as she was lying in her bed, Roland dragged her out of the bed by her foot and started "stomping" on her chest, arms, face, back, and shoulders. After that, she lay unconscious on the floor. Polk did not realize she was injured until the police arrived.

{¶9} Polk testified that she was lying on the ground when the police arrived. The police informed her that her lip was bleeding, and that there was blood on her pillow. The state introduced photographs taken by the police documenting a bloody lip, a scratch on her forehead, a swollen eye, and blood on her pillow. Polk stated that the neighbors called the police.

{¶10} On cross-examination, Polk testified that she would typically drink both bottles of alcohol, but that night, she shared the alcohol with Roland. They both consumed the third bottle that Roland bought. She admitted that she was intoxicated that night, and that the police statement she provided was difficult to read due to her intoxication.

{¶11} After reviewing the statement, she agreed that she had omitted numerous details such as the slaps in the neck, the "stomping," and the unconsciousness. Polk explained that the statement was vague because she was scared. Polk testified that she told the officers that the injuries to her nose and eye occurred that night. She also told them about a prior incident that she could not remember. She further testified that there were several incidents that she could not remember because she was so intoxicated. Polk denied telling the officers that the nose and eye injuries were from a prior incident.

{¶12} Counsel for Roland requested a short break to return to her office and retrieve the body-camera recording from an officer who responded to Polk's home.

4

Counsel explained to the court that Polk's testimony contradicted her statements to the police, and she wished to use the recording to impeach Polk's credibility. The court admonished counsel for not being prepared, and after a ten minute break, the trial resumed.

{¶13} The video was played, and Polk agreed that she had told the officers that the injuries to her nose and eye occurred two weeks prior. Polk testified that she did not know her nose was injured and could not remember how she injured it. The video also revealed that Polk was in her bed when the police arrived and not on the floor as she previously testified.

{¶14} The prosecutor and trial judge wanted the recording admitted as an exhibit. The court again chastised defense counsel for not coming to court prepared with a recording that could be admitted during trial. The court explained that the delay in admitting the exhibit would prevent the court from ruling that day from the bench. The recording was admitted into evidence after the trial concluded.

{¶15} Next, the state called Roland's probation officer, Kellie Winter, who testified that Roland informed her that he lived on Wildbranch in Butler County. In October and November 2019, Winter went to Wildbranch to conduct a home check, but Roland was not there. On one occasion, she visited in the early morning, and his sister-in-law confirmed that he lived there. Winter did not enter the home to verify that Roland resided there. After Winter's testimony, the state rested.

{¶16} Roland's brother, Antwan Roland, who lived on Wildbranch, testified that Roland had been living with him for about a year. Roland received mail at the home and his personal belongings, such as toothbrush, clothing, hats, shoes, PlayStation console, controllers, and games were there. Antwan testified that Roland

occasionally spent the night at Polk's home, but primarily slept at the Wildbranch home. Polk spent many nights with Roland at the home.

{¶17} Roland's final witness was Johnny Gillard. Gillard and Roland coach their sons' football team together. Roland accompanied Gillard once or twice a week to Gillard's brother's home, "the man cave," with a group of men to have cocktails and play games. Occasionally, Polk would accompany Roland. Many times, Roland slept "at the man cave." When he did not sleep there, Roland's brother would pick him up from "the man cave." Roland's brother also picked him up after football.

{¶18} After taking the matter under advisement, the trial court found Roland guilty of domestic violence. After rendering the verdict, Roland pled no contest to the probation violations and was found guilty. The trial court sentenced him to 12 months in prison on the domestic-violence conviction and 18 months in prison on the community-control violation. The court ordered the terms to be served consecutively.

{¶19} Roland appeals presenting four assignments of error.

### Sufficiency and Manifest Weight

{¶20} In his first two assignments of error, argued together, Roland contends that the trial court erred in finding him guilty because the finding was based on insufficient evidence, and the verdict was against the manifest weight of the evidence.

{¶21} In reviewing a challenge to the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime had been proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio

St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶22} When considering a challenge to the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶23} The credibility of the witnesses is an issue for the trier of fact to resolve. *See State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001). "Because the trier of fact sees and hears the witnesses and is particularly competent to decide 'whether, and to what extent, to credit the testimony of particular witnesses,' we must afford substantial deference to its determinations of credibility." *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047,¶ 20, citing *State v. Konya*, 2d Dist. Montgomery No. 21434, 2006-Ohio-6312, ¶ 6, quoting *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). " '[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the [finder of fact] believed the prosecution testimony.' " (Citation omitted.) *State v. Hammerschmidt*, 9th Dist. Medina No. CA2987-M, 2000 WL 254902, *4 (Mar. 8, 2000).

{¶24} Roland was convicted of domestic violence in violation of R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Roland contends that the state failed to establish that he was a "household member" and that he knowingly caused her physical harm.

{¶25} A household member includes "a person living as a spouse" which is defined, in relevant part, as "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender[.]" R.C. 2919.25(F)(1)(a)(i) and 2919.25(F)(2). Where the state demonstrates the accused was the victim's boyfriend and they had lived together, the state has met its burden. *See State v. McGlothan*, 138 Ohio St.3d 146, 2014-Ohio-85, 4 N.E.3d 1021, ¶ 15; *State v. Schwegmann*, 1st Dist. Hamilton No. C-180053, 2018-Ohio-3757, ¶ 18-19 (finding sufficient evidence of cohabitation where the defendant and the victim had been dating for six months and the defendant lived with the victim for a month prior to the domestic violence).

{¶26} Viewing the evidence in a light most favorable to the prosecution, Polk's testimony that Roland was her boyfriend and had lived with her for at least three months at the time of the offense was sufficient to prove he was a household member. Polk's testimony that Roland slapped her and kicked her in the face coupled with the photographic evidence of the cut and bloody lip was sufficient to prove that Roland caused physical harm. The natural, reasonable and probable consequence of kicking Polk in the face was sufficient to establish his intent to cause physical harm.

{¶27} With respect to the manifest weight of the evidence, Roland argues that the conviction was against the manifest weight of the evidence because Polk's testimony was not credible, and the testimony of his witnesses was more credible. However, the trial court found Polk's testimony to be credible. Because credibility is an issue for the trier of fact to resolve, we cannot say that the court clearly lost its way and created a manifest miscarriage of justice.

{¶28} Consequently, we overrule the first and second assignments of error.

Ineffective Assistance of Trial Counsel

{¶29} In his third assignment of error, Roland argues that he was denied the effective assistance of counsel because trial counsel failed to make a Crim.R. 29 motion and failed to be prepared with exhibits.

{¶30} To establish ineffective assistance of counsel, an accused must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the accused. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The failure to make either showing is fatal to the claim. *Id.* at 697. A defendant is prejudiced by counsel's performance if there is a reasonable probability that the outcome of the proceedings would have been different but for the complained-of conduct. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* This court must consider "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

{¶31} As previously discussed, the evidence was sufficient to establish that Roland was guilty of domestic violence. Therefore, Roland cannot establish that he was prejudiced by trial counsel's failure to move for an acquittal at the close of the state's case.

{¶32} Roland further argues that trial counsel was unprepared for trial because she did not bring the body-camera recording with her to court, and the body-camera video could not initially be submitted as an exhibit because it was not copied on a flash drive or a compact disc.

{¶33} Trial counsel decided to play the recording after Polk's testimony

because some of her statements were contradicted by the recording. Counsel requested a ten minute recess to retrieve the recording from her office. Counsel did not intend to admit the recording as an exhibit, rather she played the recording solely to impeach Polk. After the recording was played, the state and the court requested that the recording be admitted as an exhibit.

{¶34} The record reveals that trial counsel was prepared for trial and effectively questioned the witnesses. Although the trial court admonished counsel for not initially bringing the recording to court in a format that could be immediately admitted as an exhibit, ultimately, the recording was admitted as an exhibit for the court to review before rendering its verdict. We cannot conclude that counsel was ineffective for failing to anticipate that Polk's testimony would be inconsistent with the recording or to anticipate that the court and the prosecutor would request that the recording be admitted as an exhibit.

{¶35} We overrule the third assignment of error.

## Consecutive Sentences

{¶36} In his fourth assignment of error, Roland contends that the imposition of consecutive sentences was not supported by the record.

{¶37} Imposition of consecutive sentences is proper only when the trial court makes the findings required by R.C. 2929.14(C)(4) at the sentencing hearing and incorporates its findings into its sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. We "may increase, reduce, or otherwise modify a sentence" if we clearly and convincingly find that the record does not support the trial court's findings. R.C. 2953.08(G).

{¶38} Roland argues that the trial court's finding that consecutive sentences

were not disproportionate to the seriousness of the offender's conduct was not supported by the record because Roland was not a household member and the seriousness of the harm was in dispute.

**{¶39}** The record, however, establishes that Roland lived with Polk, and that his conduct was serious. Roland kicked Polk in the face causing her to suffer from a cut and bloody lip. Roland does not identify any evidence, let alone clear and convincing evidence, that the trial court's finding was unsupported by the record.

**{¶40}** Accordingly, we overrule the fourth assignment of error.

### Conclusion

**{¶41}** Having overruled Roland's four assignments of error, we affirm the judgments of the trial court.

Judgments affirmed.

**MYERS** and **BOCK, JJ.,** concur.

Please note:
    The court has recorded its own entry this date.