[Cite as *Bedford Hts. v. Smith*, 2022-Ohio-3036.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF BEDFORD HEIGHTS,　　　　:

　　Plaintiff-Appellee,　　　　:

　　　　　　　　　　　　　　　　　　No. 111067
　　v.　　　　　　　　　　　　　:

JOSHUA W. SMITH,　　　　　　　:

　　Defendant-Appellant.　　　　:

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 1, 2022

---

Criminal Appeal from the Bedford Municipal Court
Case No. 20CRB00166

---

### *Appearances:*

Ross Cirincione, Prosecutor, City of Bedford Heights, and
Marlene Ridenour, Assistant Prosecutor, *for appellee.*

Russell S. Bensing, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Joshua Smith ("Smith"), appeals a judgment of the Bedford Municipal Court finding him guilty of one count of domestic violence. He claims the following error:

The trial court erred in entering a judgment of conviction which was against the manifest weight of the evidence, in violation of the defendant's constitutional right to due process of law.

{¶ 2} We find that Smith's conviction is supported by competent, credible evidence and affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} Smith was charged in the Bedford Municipal Court with one count of domestic violence in violation of R.C. 2919.25(A). The charge was filed after his then-wife, Lynda Amba ("Amba"), reported to police that Smith physically assaulted her on the morning of December 10, 2019.

{¶ 4} Amba testified at a bench trial that, at approximately 6:30 a.m. on December 10, 2019, Smith barged into the bedroom where she was sleeping, jumped on the bed, and choked her. (Tr. 11.) Amba, who was surprised by the disturbance, "was gasping for air because [she] couldn't breathe." (Tr. 9.) She stated that Smith was "screaming profanity" and telling her to "get out, get out." (Tr. 11.) She further stated that Smith dragged her by her feet and kicked her and some of her belongings into the hallway of their apartment building. (Tr. 11.)

{¶ 5} Amba ran to an upstairs apartment to call the police because she did not have her cellphone. (Tr. 17.) Amba identified her voice on the recording of the 911 call, which was played for the court but was not admitted into the record. (Tr. 14, 52.) According to Amba, the police took photographs of her injuries when they arrived on the scene a short while later. (Tr. 19.)

{¶ 6} Officer Javon Jackson ("Officer Jackson"), of the Bedford Heights Police Department, responded to the scene of the domestic dispute. According to Officer Jackson, Amba was "very emotional" and "upset" when he arrived. He also stated that he observed an injury on Amba's right elbow and hand marks on her neck. He testified, in relevant part:

Q: Did you observe any injuries on Ms. Amba when you looked at her?

A: Yes, I did. I observed an injury on her right elbow.

Q: Did the injury appear to be fresh?

A: Yes.

* * *

Q: * * * [Y]ou said something about she indicated she had been choked around the neck?

A: Yes.

Q: Did you observe any injury to that area of her body?

A: Yes.

Q: What did you see?

A: Just a little fresh — looked like fresh marks of a print around her neck.

Q: Like a palm?

* * *

A: Yeah, a handprint, fingerprints.

* * *

Q: Okay. But you do remember seeing a couple of injuries on her?

A:  Yes, ma'am.[1]

(Tr. 45.)

{¶ 7} Amba and Smith lived with another individual, Ricky Darnell Harris, Jr. ("Harris"), who was a friend of Smith.  (Tr. 11.)  Harris, who was sleeping in the apartment at the time of the incident, testified that he did not hear any screaming or yelling.  (Tr. 55.)  Harris, who often wears headphones, testified that he was not wearing them at the time of the incident.  He confirmed that the police responded to the scene and that they entered the apartment, but they did not ask him any questions about the incident.  He testified:

> Q:  Did the police question you at all about whether or not you saw anything or heard anything?
>
> A:  Not at all.

(Tr. 56.)   When asked on cross-examination why Harris did not volunteer any information to help his friend, Smith, Harris replied, "None of the officers asked me any questions."  (Tr. 58.)

{¶ 8} Smith testified in his own defense.  He explained that he and Amba were having marital problems and that, on the morning of December 10, 2019, he decided to look through her phone "to see what the issue was."  (Tr. 63.)  Upon searching Amba's phone and Apple watch, he discovered text messages from another man named Timothy Johnson ("Johnson").  (Tr. 63.)  In one text, Johnson

---

[1] Officer Jackson testified that photographs were taken of Amba's injuries, but he could not remember who took the photographs.  Although he discussed the photographs during his direct testimony, the photographs were not admitted into evidence.  (Tr. 45, 52.)

asked, "Are you finally getting a divorce?"  In later texts, he stated, "I love you, I miss you sleeping in my bed," and "I wish you were here."  According to Smith, Amba replied to Johnson's texts, stating, "I love you, too." (Tr. 63.)

**{¶ 9}** When asked how the discovery of the text messages made Smith feel, he stated that he was "disappointed" but denied becoming "enraged." (Tr. 63.)  But immediately after reading the texts, Smith woke Amba up and confronted her.  He explained:

> Well, after I read that, I woke her up and I handed her her Apple watch and her phone, and I said, You love him, right?  And you need to get out.  All your stuff will be in the hallway.
>
> So I walked to the front of the room, I grabbed all her belongings, as far as coat, purse, and things, and I threw it in the hallway.
>
> And when I came back in the room, she was like, What are you talking about?  And I said, I seen the message.  I'm not stupid.  You need to go.  You need to get out of my house.
>
> And I — when she went out * * * to grab her purse and stuff, I shut the door.

(Tr. 64.)

**{¶ 10}** On cross-examination, Smith denied he was jealous about his wife having an affair with another man. (Tr. 72.)  He stated, "I was not jealous at all.  If you are with another person, then you should be with that person and not with me." (Tr. 72.)  Smith also denied that he was screaming during the incident. (Tr. 74.)  Finally, Smith admitted that Harris accused Amba of stealing his PlayStation game system. (Tr. 75.)

{¶ 11} After hearing the evidence and the parties' closing arguments, the court found Smith guilty of one count of domestic violence in violation of R.C. 2929.25(A). The court sentenced him to a $500 fine, a 180-day suspended jail sentence, and one year of active probation. The court also issued a no-contact order prohibiting Smith from contacting Amba. Smith now appeals his conviction.

## II. Law and Analysis

{¶ 12} In the sole assignment of error, Smith argues his domestic violence conviction is against the manifest weight of the evidence. He contends that Amba's account of the domestic incident lacked credibility and that we should not defer to the trier of fact's determinations of credibility. He asserts that by deferring to the trier of fact, we subvert the manifest weight of the evidence standard of review and equate it with the standard applied to a sufficiency-of-the evidence review.

{¶ 13} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), paragraph two of the syllabus. Sufficiency is a test of adequacy and requires a determination of whether the prosecution met its burden of production at trial. *Id.* at 386; *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 14} In judging the sufficiency of evidence, we view the evidence in the light most favorable to the government without regard to credibility. *Id.* at 266, citing *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

{¶ 15} In contrast to sufficiency, a review of the manifest weight of the evidence questions the credibility of the evidence presented and assesses whether the state met its burden of persuasion at trial. *Thompkins* at 387. In a manifest weight challenge, the reviewing court must examine the entire record, weigh the evidence and all the reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶ 16} When reversing on a case of manifest weight, the Ohio Supreme Court has held that an appellate court "sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of conflicting testimony." *Id.* at 546-547, quoting *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The Supreme Court's characterization of the appellate court as a "thirteenth juror" refers to the appellate court's "'discretionary power to grant a new trial.'" *Id.* at 547, quoting *Martin* at 175. As a "thirteenth juror," the appellate court may disagree with the factfinder's resolution of the conflicting evidence and, in effect, create a deadlocked jury, which requires a new trial.

{¶ 17} Although we sit as a "thirteenth juror," we nevertheless give "great deference" to the trier of fact. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 26 ("*Thompkins* instruct[s] that the fact-finder should be afforded great deference."). Unlike a sufficiency analysis, where credibility is not at issue, we assess the witnesses' credibility in reviewing a challenge to the manifest-weight of the evidence, but we may only grant a new trial when it is clear that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 547, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). We may not merely substitute our judgment for that of the jury. "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin* at 175.

{¶ 18} In *State v. Marshall*, 8th Dist. Cuyahoga No. 109633, 2021-Ohio-4434, we rejected the appellant's argument that we should afford the jury less deference when reviewing a manifest-weight-of-the evidence challenge. *Id.* at ¶ 31. We explained that the trier-of-fact is uniquely positioned to view the witnesses' demeanor, gestures, facial expressions, and voice inflections. *Id.* These outward behaviors are not evident in a written transcript. Demeanor is not what the witness says, but the manner in which he or she says it. Demeanor evidence is invaluable in assessing a witness's credibility, yet it is totally lost in transmission to the court of appeals. "Because the trier of fact sees and hears the witnesses and is particularly competent to decide 'whether, and to what extent, to credit the testimony of

particular witnesses,' we must afford substantial deference to its determinations of credibility." *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20,[2] quoting *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 Ohio App. LEXIS 3709, 4 (Aug. 22, 1997). *See also State v. Marshall*, 8th Dist. Cuyahoga No. 109633, 2021-Ohio-4434, ¶ 31. So, again, "'[a]lthough we have the discretionary power of a 'thirteenth juror' to grant a new trial, that power should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Marshall* at ¶ 31, quoting *State v. Hester*, 8th Dist. Cuyahoga No. 108207, 2019-Ohio-5341, ¶ 22.

{¶ 19} Smith was convicted of one count of domestic violence in violation of R.C. 2919.25(A). R.C. 2919.25(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." As previously stated, Smith contends his domestic violence conviction is not based on credible evidence.

{¶ 20} Smith first argues that Amba's testimony that she was yelling in the bedroom while Smith was assaulting her is not credible because Smith and Amba's roommate, Harris, testified that he did not hear any yelling. Harris testified that the walls of the apartment were thin and he would have heard if they were arguing in the other bedroom. However, just because Harris's testimony conflicts with Amba's

---

[2] In *Barberton*, the Ohio Supreme Court held that a police officer's unaided visual estimation of a vehicle's speed is sufficient to support a conviction for speeding. After determining that the officer's testimony provided sufficient evidence to support the conviction, the court stated that that officer's credibility nevertheless remained an issue for the trier of fact. *Barberton* at ¶ 20.

does not mean that Amba's testimony is not credible. To the contrary, the evidence showed that Harris was biased in favor of Smith because they were friends. There was also evidence that Harris was angry with Amba because he believed she stole his PlayStation game system. Therefore, the record does not support Smith's argument that we should afford Harris's testimony more credibility than Amba's.

{¶ 21} Smith next argues that Amba's testimony regarding her injuries is not credible because the police report indicated that Amba's only injury was something she did not mention, a small scrape to her right elbow. However, Officer Jackson clearly and unequivocally testified that he observed what appeared to be a fresh injury on her right elbow. He also testified that he observed a handprint on her neck. This testimony corroborates Amba's testimony that she sustained an injury to her elbow and that Smith choked her during the altercation. Furthermore, Amba's trial testimony was remarkably consistent with the written statement she provided to police more than a year earlier.

{¶ 22} Finally, Smith argues that Amba's explanation as to what started the dispute was not credible. She testified that Smith was angered when he saw a text message between Amba and her sister in which Amba described seeing Smith talking to another woman. Smith contends this explanation is not logical and, therefore, lacks credibility.

{¶ 23} It is not clear why Amba provided this explanation, but it does not matter. Smith explained that he was angered when he saw a text exchange between Amba, his then-wife, and another man, which indicated that Amba was having an

affair with another man. What is not credible, however, was Smith's testimony that he was not jealous of the affair.

{¶ 24} The verdict in this case is based solely on witness testimony, and the trial court believed Amba's testimony over Smith's and Harris's. But, as previously stated, the evidence showed that Harris had reasons to be biased in favor of Smith, his friend. Smith also had reason to lie to the court to avoid a guilty verdict. And, Amba's testimony was corroborated by the testimony of an unbiased, third-party witness, Officer Jackson. Her testimony was also consistent with the written report she provided to police regarding the incident more than a year earlier. In weighing the evidence and the witnesses' credibility, we cannot say that the trier of fact clearly lost its way and created such a miscarriage of justice that Smith's conviction must be reversed and a new trial ordered.

{¶ 25} Accordingly, the sole assignment of error is overruled.

{¶ 26} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Bedford Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

LISA B. FORBES, P.J., CONCURS;
EMANUELLA D. GROVES, J., CONCURS IN JUDGMENT ONLY