[Cite as *State v. Stone*, 2020-Ohio-502.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 19CA1086 |
| | : | |
| vs. | : | |
| | : | |
| CRYSTAL STONE, | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Timothy Young, Ohio Public Defender, and Stephen P. Hardwick, Assistant Public Defender, Columbus, Ohio, for Appellant.

David Kelley, Adams County Prosecuting Attorney, and Michele L. Harris, Assistant Adams County Prosecutor, West Union, Ohio, for Appellee.

_____

Smith, P.J.

{¶1} Crystal Stone appeals the Adams County Court's February 4, 2019 Judgment Entry finding defendant guilty and imposing sentence after a bench trial. Stone ("Appellant") was convicted of theft, a violation of R.C. 2913.02, and a misdemeanor of the first degree. On appeal, Appellant essentially argues that the "knowing" element of the crime was not proven and therefore, her conviction is against the manifest weight of the evidence.

Based upon our review of the record, we find no merit to Appellant's sole assignment of error. Thus, we affirm the judgment of the trial court.

FACTS AND PROCEDURAL HISTORY

{¶2} Mineral Springs Lake is a campground in Adams County. A yearly fundraiser event is held there over Labor Day weekend to benefit Kamp Dovetail, a summer enrichment camp for handicapped children. On September 2, 2018, approximately 300 people attended the benefit, including Appellant, Heath Robinson, Nicole Ogden, and Jamion Jones. The event festivities included live music, an auction, and a raffle.

{¶3} Appellant and Robinson arrived in Robinson's orange Jeep. Ogden and Jones arrived in a black jeep. The group of four were drinking alcohol at the Ogden family's campsite. They later proceeded to the raffle held at a shelterhouse. Appellant was later asked to leave after being accused of stealing a Coach purse. The Coach purse was located in Robinson's orange Jeep. Its contents, a wallet and some MaryKay makeup were located in the black Jeep. All items were returned to the event organizers.

{¶4} A few days later, Appellant presented to the Adams County Sheriff's Department because she had heard "through the grapevine" that charges had been pressed against her. Appellant gave a videotaped

statement to Deputy John Shope.  Appellant essentially advised Deputy Shope that she "thought she had won the purse" and it was all a huge "misunderstanding."  However, Appellant was charged with theft, a misdemeanor of the first degree.  She entered a not guilty plea and eventually elected to have a bench trial.

{¶5} At trial on December 28 and December 31, 2018, the State presented several witnesses, including Tara Mongold, who attended the event; Tyler Cantrell, a trustee at Mineral Springs Lake and campground; Devin Trammell, an employee at Mineral Springs; Tim Smalley, an owner of the lake and campground; Nicole Ogden, Appellant's friend; and, Deputy John Shope, an Adams County Sheriff's deputy who was working special duty assignment at the event.  The State also played Appellant's videotaped statement and the trial court admitted it into evidence.

{¶6} Appellant and Heath Robinson testified on behalf of the defense. The trial court made a finding of guilty and passed the matter for presentence investigation.  On February 4, 2019, Appellant was sentenced to a 180-day jail sentence with all days suspended, a $300.00 fine, 16 hours of community service, and $1,418.80 in court costs.

{¶7} This timely appeal followed.  Where pertinent, additional facts are set forth below.

ASSIGNMENT OF ERROR

"I. CRYSTAL STONE'S CONVICTION WAS
AGAINST THE MANIFEST WEIGHT OF THE
EVIDENCE BECAUSE THE OVERWHELMING
EVIDENCE SHOWS THAT SHE BELIEVED SHE
HAD WON THE PURSE."

A. STANDARD OF REVIEW

{¶8} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter,* 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119; *State v. Hammond,* 4th Dist. Ross No. 18CA3662, 2019-Ohio-4253, at ¶ 55.

{¶9} The weight and credibility of evidence are to be determined by the trier of fact, citing *State v. Kirkland,* 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, at ¶ 132; *Hammond,* at ¶ 56. The trier of fact is free to believe all, part, or none of the testimony of any witness, and we defer to the trier of fact on evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice

inflections, and to use these observations to weigh their credibility. *State v. Dillard,* 4th Dist. Meigs No. 13CA9, 2014-Ohio-4974, at ¶ 28, citing *State v. West,* 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23.

{¶10} " 'Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." ' " *State v. Schroeder*, 4th Dist. Adams No. 18CA1077, 2019-Ohio-4136 at ¶ 61; *State v. Wickersham,* 4th Dist. Meigs No. 13CA10, 2015-Ohio-2756 at ¶ 24, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶ 12, quoting *Thompkins,* 78 Ohio St.3d at 387, quoting Black's Law Dictionary 1594 (6th Ed.1990).

{¶11} " 'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.' " *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20, quoting *State v. Konya,* 2nd Dist.

Montgomery No. 21434, 2006–Ohio–6312, ¶ 6, quoting *State v. Lawson,*

2nd Dist. Montgomery No. 16288 (Aug. 22, 1997).  As the *Eastley* court

explained:

> " '[I]n determining whether the judgment below is manifestly
>
> against the weight of the evidence, every reasonable intendment
>
> must be made in favor of the judgment and the finding of facts.
>
> * * *
>
> If the evidence is susceptible of more than one construction,
>
> the reviewing court is bound to give it that interpretation
>
> which is consistent with the verdict and judgment, most
>
> favorable to sustaining the verdict and judgment.' "

*Eastley* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d

77, 80, 461 N.E.2d 1273 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d,

Appellate Review, Section 60, at 191–192 (1978).  Thus, an appellate court

will leave the issues of weight and credibility of the evidence to the fact

finder, as long as a rational basis exists in the record for its decision.  *State v.*

*Picklesimer,* 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282,¶ 24; accord

*State v. Howard,* 4th Dist. Ross No. 07CA2948, 2007–Ohio–6331, ¶ 6 ("We

will not intercede as long as the trier of fact has some factual and rational

basis for its determination of credibility and weight.").

{¶12} Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, " ' "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." ' " *State v. Dunn,* 4th Dist. Jackson No. 15CA1, 2017-Ohio-518, at ¶ 17; *Wickersham, supra,* at ¶ 26, quoting *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  A reviewing court should find a conviction against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id*., quoting *Martin,* 20 Ohio App.3d at 175; *State v. Lindsey,* 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

## B. LEGAL ANALYSIS

{¶13} Appellant was charged and convicted of one count of theft, a first-degree misdemeanor in violation of R.C. 2913.02, which provides, in pertinent part, as follows:

(A) No person, with purpose to deprive the owner of

property or services, shall knowingly obtain or exert

control over either the property or services in any of

the following ways: (1) Without the consent of the owner or person authorized to give consent * * *."

{¶14} On appeal, Appellant argues that the overwhelming weight of the evidence supports her own testimony that due to the chaos in the vicinity of the raffle, she mistakenly believed she had won the Coach purse and its contents. Appellant concludes that the weight of the evidence does not support her conviction and requests this court overturn her conviction. However, having weighed the evidence and all reasonable inferences, considered the credibility of the witnesses, and resolving conflicts in the evidence, we cannot say that the trier of fact clearly lost its way and created a manifest miscarriage of justice.

{¶15} We begin by setting forth the relevant evidence presented at trial. Tyler Cantrell testified that all of the prizes are set up on several picnic tables. Each prize is numbered and has a corresponding box or bucket in front of it. Raffle participants place their raffle tickets into the buckets for the prizes they want to win. At the end of the night, each bucket is collected and the prize is drawn.

{¶16} The person running the raffle takes the winning ticket and places it on a bulletin board with the prize and then writes the winner's name. When a person realizes he or she has won, the person presents the

ticket, the ticket is verified, and the prize is awarded. People sometimes write their campsite numbers on the tickets as well. Cantrell testified that the persons running the raffle were announcing the winners and distributing prizes when it was realized that the Coach purse had not been claimed but had disappeared.

{¶17} Tara Mongold testified she was in attendance at the raffle. She described the procedure for running the raffle and claiming prizes similarly. Mongold added that to her knowledge, there were no instructions on how to claim the prize items. She testified that it appeared to her that people were picking up their prize items as they won them and leaving.

{¶18} Tara Mongold was standing next to the tall pink Coach purse with MaryKay makeup items and a Coach wallet inside when she observed two women with dark hair standing nearby. She was not paying close attention to what the women were doing. At one point, a male walked up behind the two dark-haired women. The group took the purse and walked away. Mongold did not see who picked up the purse; however, she identified Appellant as one of the women who left with it.

{¶19} Mongold testified "everybody was freaking out," and she didn't understand because she assumed one of the women had won the purse. Then she overheard others talking. She advised that the two dark-

haired women walked away with the purse. Mongold pointed in the general direction where the women walked, where two Jeeps were parked. On cross-examination, Mongold testified she did hear numbers being called during the raffle. She testified she did not hear anyone's name called to claim the Coach purse.

{¶20} Devin Trammell testified Laura Vance, the director of Kamp Dovetail, was running the raffle. Vance approached him and asked for help with regard to the missing purse. Trammell went over to the Jeeps, which were parked side by side. Trammell located the purse which was in the back seat of an orange Jeep. He used a flashlight, looked underneath both Jeeps, and discovered the purse which he gave to Laura Vance. Trammel testified: "She, they kept saying, both of them kept saying that they didn't do it and then, they proceeded to say that well, we thought it was ours, we thought it was ours." At this point, it was decided to involve Cantrell and a deputy. On cross-examination, Trammell testified the purse was sitting in the middle of the back seat, not hidden.

{¶21} Cantrell testified Appellant was not cooperative in identifying the purse in her vehicle. He also testified:

> **Well at the beginning Ms. Stone repeatedly denied**
>
> **that she had taken it. She said that multiple times**

**that she had enough money to buy as many purses**

**as she wanted, she had no reason to take it. And**

**then she further denied that she had taken it and**

**then ultimately she said I thought I had won. Which**

**I did not believe because of how it[the raffle] was being**

**held, there would be no, there's no confusion as to**

**whether you won something or not it was pretty clear.**

**And the process in which you claimed was pretty clear.**

**Even if you thought you'd won, you would've went up**

**you said hey I think I won this and they would look to**

**know you didn't win it so, that is what she had said at**

**that time.**

{¶22} On cross-examination, Cantrell testified there was music prior to the raffle but disagreed that the atmosphere was "chaotic."

{¶23} Tim Smalley testified that Laura Vance asked for assistance and they proceeded to the Jeeps. Smalley testified that the women did not want to cooperate with the Sheriff or the others. He also testified the purse was found in one Jeep and the wallet and makeup was found in the other one. The women indicated they did not know how it ended up in the Jeeps. Appellant and her boyfriend left in the orange Jeep. Smalley testified:

**They said that they thought that they had won it and that there [sic] name was called. And like, there isn't really no way for that because Laura is so organized with that stuff, um, you know there is the bulletin boards that you go immediately by. And she'll only do like fifteen drawings at a time and she immediately sticks the stickers on there, and then she immediately goes to produce. And there was just no way for the mistake um, to happen * * *.**

{¶24} On cross-examination, Smalley testified the purse was pulled out from underneath the seat of the orange Jeep.

{¶25} Nicole Ogden testified she was at her father's campsite the entire day. Appellant and Heath Robinson showed up for a family birthday party around 6 o'clock. After the party, Appellant and she went to the shelterhouse where the raffle was held. It was very loud. They observed people calling off names and numbers and then the winners picking up prizes off the table. Appellant's boyfriend bought the raffle tickets, and Appellant placed them for the Coach purse.

{¶26} Ogden testified she assumed appellant won the purse because Appellant told her she heard her name and the lot number. Ogden denied

actually hearing her name and number. Appellant picked up the purse. They walked to the Jeeps, left the purse, and then went back to the shelter.

{¶27} Ogden denied seeing Appellant place half of the prize in her Jeep. Appellant used the bathroom in front of the Jeep. Then they started to walk back to the shelterhouse. As they were in the process of walking back, a bunch of people bombarded them with accusations of stealing the purse. Ogden testified: "And at that point I didn't think anybody stole anything." The Smalley family asked them to leave.

{¶28} On cross-examination, Ogden testified they both bid on the purse and agreed to split the contents. In her opinion, Appellant was not trying to hide it. They didn't rush to the Jeeps and Appellant didn't act nervous. Ogden admitted she did not see where the purse was placed.

{¶29} Deputy John Shope testified he was called out to the shelter on the report of a theft of a purse. He then went to the two Jeeps sitting away from the shelter in an isolated area, approximately 50 feet from the shelter. Shope testified he asked Appellant if "they" took a purse and she didn't really answer. She was cooperative but said she had to go use the restroom. The purse was located before the deputy arrived.

{¶30} Appellant presented to the sheriff's department a few days later and agreed to give a videotaped statement after being given her Miranda rights. Shope testified he asked why Appellant didn't explain it that night. Appellant advised him **"there was a lot of people around, had her nervous and she said she had to pee so bad, she had to leave, is what she told me."** Shope testified at no point, on September 2, 2018, did Appellant claim she thought she had won the purse. He testified neither one stated they thought they won the purse.

{¶31} The State rested. The defense case began with Heath Robinson's testimony that he dated Crystal Stone at the time of the alleged theft and was with her at Mineral Springs Campground that evening. He drove her to the campground in his orange Jeep.

{¶32} Robinson was not present when the alleged theft occurred. He and Jamion Jones were watching kids play basketball. He bought raffle tickets and gave them to Appellant and Nicole Ogden. At no time did he see the purse or see Appellant with the purse.

{¶33} Robinson had the keys to the Jeep but the top had been removed. The owners of the lake came to him and said there was a purse in his Jeep and a purse in the other one. The owners initially thought he had taken the purse.

{¶34} Finally, Appellant testified, corroborating much of the prior testimony. She filled out the raffle tickets with Heath Robinson's name and Ogden's campsite number. Nicole and she put all the tickets into the bucket for the Coach purse, planning to share the prize.

{¶35} Appellant testified the raffle scene was "madness." People were coming and going, picking up prizes left and right. She picked up the Coach purse because she thought she won it. She thought the campsite number was announced. Appellant testified:

> Nicole verified, and was like "yeah, we you know, got
>
> this and then I just picked it up not thinking, because I
>
> thought we won it. I took it to the Jeep, just placed it on
>
> the back seat and just walked back to the shelter house
>
> to join everybody else and listen, you know."

{¶36} When they went back to the Jeeps, Appellant placed the purse in the orange vehicle. Nicole took the wallet and placed it in the other Jeep. Appellant put the purse in the back passenger seat in plain view. She testified she wasn't trying to hide it and had no intent to steal.

{¶37} On the way back, Appellant and Nicole were approached by a group of people who claimed the purse was missing. Appellant pointed her finger and said "It's right there," and indicated they thought they won it.

She was angry because they came in a circle, pointing fingers and accusing her. She testified it was an honest mistake. Appellant testified she told Deputy Shope that it was a misunderstanding and he told her to come back to make a statement. Nicole also thought Appellant had won the purse and clarified it for her before she picked it up.

{¶38} On cross-examination, Appellant identified herself in the videotaped statement, which was marked as Exhibit 1 and later admitted into evidence. In the video, Deputy Shope explained Appellant's *Miranda* rights and began questioning her. Appellant told him she thought the number was called so she grabbed the purse and walked. She didn't try to hide it. Shope asked her why she didn't tell him that she thought she had won it before. Appellant answered:

> Because I got scared because everybody was like right
>
> there, then I had to pee, and I was like I have to, I just
>
> got scared because I'm not, I don't ever get in trouble so,
>
> I didn't know what would happen.

{¶39} Shope asked why there were different "pieces" of the raffle prize in different vehicles. Appellant explained their agreement to split the win. Shope further questioned as follows:

> The owner stated that they asked you, did you think

you won it, you said we don't got it.  You told them you
didn't have it.  So, then they found it in your Jeep, was
you scared or what?  They, they, that's what they told me,
that they asked you, they asked you both if you thought
you guys won it.  But, you didn't, and you guys wouldn't
tell them you even had it.  No so you wouldn't tell them,
they had to find it by looking in the vehicle with a flashlight
outside the vehicle.

{¶40} Appellant simply replied:  "Yeah?"  Shope inquired: "Why
didn't you just tell them like you're telling me now, like I thought I won."
Appellant replied:  "Yeah well, I should've yeah, we should've.  We both
didn't and we should have."  Shope said, "And that was the question."
Appellant replied:  "Like, I know and that's why like I'm willing to
apologize to them or it's all a big misunderstanding."

{¶41} Shope continued:  "But then you guys, but then you guys, when
I showed up the question, you guys act like you didn't know anything about
it."  On redirect, Appellant reiterated that they put the purse in the Jeep after
they divided the contents, as agreed.

{¶42} The State called Tyler Cantrell on rebuttal.  The prosecutor
inquired:  "Mr. Cantrell, when you came down to the Jeep area * * * what

did Crystal Stone * * * say to you regarding how the purse got in the vehicle"?   Cantrell clarified that she spoke to the group that approached her, including himself, as follows:

She, she made repeated comments about how she didn't

take it, she wouldn't need to take it because she had enough

money to buy them.  And that the one Jeep wasn't hers and

so, you know, anything that was found in that wasn't hers

clearly she didn't take anything out of that one.

{¶43} On cross, defense counsel asked Cantrell if he ever asked her if she won it.  Cantrell replied: "No, because it was clear that she didn't." Counsel continued:  "You didn't ask her if she thought she had won it? Cantrell replied, "No * * * because that was not believable because there was no issues with the fifty something prizes other than this one."

{¶44} On redirect, Cantrell was asked:  "But, just to be clear, she was claiming she didn't know how the purse got in the Jeep?"  He answered, specifying Appellant stated:

The one, I can't remember which was in which Jeep but

whatever the items were, because there [sic] makeup and the

change purse, whatever the items were in the other Jeep,

it was like those were not mine, I don't know how they

got there."

{¶45} Given all the testimony, we cannot say that the trial court clearly lost its way and created a manifest miscarriage of justice that the conviction must be reversed.  Nor can we say that this is an exceptional case in which the evidence weights heavily against conviction.  There was some conflict in the evidence presented at trial.  For example, Appellant and Ogden described the scene as "chaotic," while Tyler Cantrell disagreed with that characterization.  Upon review, the most significant conflicts occurred with regard to Appellant's and Nicole Ogden's testimony.

{¶46} Nicole Ogden testified she never actually heard Appellant's name and number called.  Ogden emphasized repeatedly that she assumed Appellant won the purse because Appellant told her she heard her name and the lot number.  However, in her testimony, Appellant twice testified that Ogden verified for her that she had won it.

{¶47} Also, Devin Trammell testified the Jeeps were parked side by side.  Ogden testified she did not see where the purse was placed and denied seeing Appellant place half of the prize in the other Jeep.  However, Appellant testified that Nicole Ogden took the wallet and placed it in the other Jeep.

{¶48} In addition, both Deputy Shope and Tyler Cantrell testified that Appellant did not immediately tell them she mistakenly thought she won the purse. Appellant indicated she was mistaken when she gave her videotaped statement a few days later. Deputy Shope asked her why she didn't just explain she was mistaken at the time and Appellant responded that she was scared because everybody was there and she "had to pee." Yet Nicole Ogden testified that Appellant used the bathroom in front of one of the Jeeps before they started to walk back to the shelterhouse where, on the way, they were confronted by the angry group. She testified that the confrontation occurred in "a matter of five minutes."

{¶49} The facts in evidence are incongruent. And, while we are not convinced that Ms. Ogden may have testified entirely truthfully, we decline to second-guess the trial court's judgment. The trial court was in the best position to observe the witnesses' demeanor, especially Appellant's, weigh credibility, and resolve the conflicts within the evidence.

{¶50} For the foregoing reasons, we find Appellant's conviction for theft is not against the manifest weight of the evidence. We find no merit to Appellant's assignment of error. As such, it is hereby overruled and the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Hess, J.: Concur in Judgment and Opinion.

For the Court,

BY: _____
Jason P. Smith
Presiding Judge

### **NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**