[Cite as *State v. Rodenberg*, 2022-Ohio-713.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | |
| ERIK J. RODENBERG | : | Case No. 21 CAA 05 0023 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Court of  Common Pleas, Case No. 2020CRI00678


JUDGMENT:      Affirmed


DATE OF JUDGMENT:      March 10, 2022


APPEARANCES:

For Plaintiff-Appellee

JOEL C. WALKER
145 N. Union Street
3rd Floor
Delaware, OH  43015

For Defendant-Appellant

JONATHAN T. TYACK
HOLLY B. CLINE
536 South High Street
Columbus, OH  43215

*Wise, Earle, P.J.*

{¶ 1} Defendant-Appellant Erik J. Rodenberg appeals the May 17, 2021 judgment of the Delaware County Court of Common Pleas which sentenced him to a period of community control following his conviction for one count of gross sexual imposition pursuant to R.C. 2907.05(A)(1). Plaintiff-Appellee is the state of Ohio.

Facts and Procedural History

{¶ 2} On September 26, 2018, both the victim in this matter, J.H, and appellant worked for Columbus Consulting International, LLC (CCI). Appellant was a partner with CCI and J.H was an employee. On that day both were present in Delaware County, Ohio for a partner's meeting. J.H. stayed at the Polaris Hilton where the meeting was held and appellant stayed at a nearby Residence Inn.

{¶ 3} After business meetings and a group social event concluded for the day, several partners present in the Hilton's bar decided to venture out. J.H. joined appellant and Drew Wilmot another partner with CCI. They left in an Uber from the Hilton. Over the following several hours appellant and J.H. visited three bars. Wilmot did not join J.H. and appellant at the third bar. Throughout the evening Appellant showered J.H. with flattery. The two kissed but J.H. advised appellant she would not be having sex with him.

{¶ 4} At approximately 2:30 a.m. J.H and appellant left the last bar. Appellant called an Uber and J.H. assumed she would be dropped off at the Hilton and appellant would return to the Residence Inn. But appellant directed the driver to return to his hotel. Upon arrival appellant pressured J.H. to come to his room with him. He assured her they would just talk. J.H. complied.

{¶ 5}   Once in appellant's room, J.H. and appellant's version of the facts differ, as will be discussed later in this opinion. According to J.H., appellant went to the bedroom and J.H. stood in the living room and placed her purse on a table. J.H. told appellant she had too much to drink and needed to return to her hotel. Appellant told J.H. he could not hear her and to come closer. When J.H. failed to do so, appellant emerged from the bedroom with his belt and pants undone.

{¶ 6}   Appellant then asked J.H. to sit on the bed and J.H. sat at the foot of the bed. Appellant removed her shoes and threw them in to the living room. Appellant then directed J.H. to sit at the top of the bed as he put his arms underneath hers and guided her to the top of the bed. He then attempted to convince J.H. to get under the covers, but she refused and scooted back down to the foot of the bed. Appellant then stood in front of J.H., exposed his penis and began masturbating. He directed J.H. to take off her shirt so he could see her breasts. J.H. stood up and told him she did not want to. Appellant asked "what's the big deal?"

{¶ 7}   Appellant then walked to the opposite side of the bed, removed his shirt, sat on the bed, and continued masturbating. He asked J.H. to touch his penis. She sat on the bed and complied for a few seconds. When appellant attempted to touch J.H.'s crotch and remover her pants, she decided she had had enough. She exited the bedroom, put on her shoes, grabbed her purse, and attempted to leave.

{¶ 8}   While J.H. fumbled with the operation of the deadbolt, appellant, now completely naked, pushed himself between J.H. and the door. He next grabbed J.H.'s upper arms, pushed her back into the room and pinned her against the kitchen table. Appellant then shoved his hands under J.H.'s shirt and bra to grope her breasts. While

grinding his penis against J.H's crotch, appellant kissed J.H.'s face and neck. J.H. repeatedly told appellant to stop. She managed to wiggle out from under appellant and again went to the door. Appellant again blocked her exit. This time he told her to "fix herself" straightened her clothing and hair, and told her she could not tell anyone what happened that evening. He then allowed her to leave.

{¶ 9}   On her way back to her hotel, J.H. franticly called Brad Sterling, a partner in CCI and a personal friend. She told Sterling most of what happened that evening, but not all as she was embarrassed and feared he would tell someone else. Sterling encouraged her to tell someone, but stated he would support her regardless of her decision.

{¶ 10} The following morning at 6:54 a.m., appellant sent J.H. an email stating he had a question about the events of the day and to call him. She did not respond. At 7:59 a.m. appellant sent J.H. a text stating "Hoping all is well." He then put in quotes "I am glad we all went back to the hotel after the bar with Drew." J.H. took this as appellant telling her what the story should be; that he dropped her off after the last bar they visited with Wilmot.

{¶ 11} J.H. arrived at the first meeting of the day at 8:30. J.H. always sat with her boss, Maria during meetings. When she arrived, however, she found appellant sitting with Maria. He patted the seat next to him and told her he had saved her a seat. J.H. asked permission from Maria to sit elsewhere.

{¶ 12} Later that morning, after speaking with Sterling again and sharing appellant's text messages with Sterling, J.H. sent appellant a text stating "What happened last night was not ok. I said multiple times and on multiple occasions that I needed to go

to my hotel and I needed to leave. You should not have pressured/negotiated/attempted to convince me of anything else. Don't ever do that to me again and don't ever do that to any other woman. Please limit our interactions to strictly business."

{¶ 13} By the end of that day, J.H. had decided to talk to Maria about what happened. The two agreed to speak the following day before J.H. went home. The ensuing meeting included Sterling. J.H. had a discussion with them about the previous evening. As a result of that discussion, CCI launched an internal investigation.

{¶ 14} J.H. also reported the matter to Detective Earl Westfall of the Columbus Police Department. Westfall took a statement from J.H., collected the clothing she had been wearing the evening in question, and obtained a DNA standard from both J.H. and appellant. Later DNA testing confirmed the presence of appellant's DNA on the front crotch area of J.H.'s pants, the inside of her shirt, and inside the cups of her bra.

{¶ 15} On October 22, 2020, the Delaware County Grand Jury indicted appellant on two counts of gross sexual imposition, felonies of the fourth degree. Count one pertained to appellant putting his hands under J.H.'s shirt and bra and groping her breasts, and count two pertained to appellant grinding his penis against J.H.'s crotch.

{¶ 16} Appellant pled not guilty to the charges and opted to proceed to a jury trial which began on April 6, 2021 and concluded April 9, 2021. The state presented the testimony of J.H. and six other witnesses. Appellant testified on his own behalf. After hearing the evidence and deliberating for eight hours, the jury convicted appellant on count one and acquitted him of count two. The trial court subsequently sentenced appellant to a period of community control.

{¶ 17} Appellant filed an appeal and the matter is now before this court for consideration. He raises three assignments of error for our consideration as follow:

I

{¶ 18} "THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SUPPORT RODENBERG'S CONVICTION."

II

{¶ 19} "THE JURY ERRED IN FINDING RODENBERG GUILTY OF GROSS SEXUAL IMPOSITION, AS THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

III

{¶ 20} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO GIVE RODENBERG'S REQUESTED *DYE* JURY INSTRUCTION REGARDING FORCE."

I, II

{¶ 21} We address appellant's first two assignments of error together. In these assignments of error, appellant argues his conviction is against the manifest weight and sufficiency of the evidence. We disagree.

Standard of Review

{¶ 22} On review for sufficiency, the reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable

doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

The Conviction

{¶ 23} Appellant was convicted of one count of gross sexual imposition pursuant to R.C. 2907.05(A)(1) That section provides, in relevant part:

> No person shall have sexual contact with another, not the spouse of
> the offender * * * when * * *:
> (1) The offender purposely compels the other person * * * to submit
> by force or threat of force.

{¶ 24} R.C. 2907.01(B) defines "Sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

{¶ 25} R.C. 2901.01(A) defines "force or threat of force" as any violence, compulsion, or constraint physically exerted or threatened to be exerted by any means upon a person or thing.

### Appellant's Argument

{¶ 26} Appellant argues the state failed to prove he acted with purpose to compel J.H. to engage in sexual contact with him by force.

{¶ 27} There is no dispute that some consensual sexual contact took place between appellant and J.H. on the evening in question, and we will not revisit those facts. Appellant's conduct only became potentially criminal when J.H. clearly indicated she was no longer interested in continuing this conduct, desired to leave appellant's hotel room, and appellant prevented her from doing so. We therefore focus on that portion of the evidence.

### J.H.'s Testimony

{¶ 28} J.H testified that once inside appellant's hotel room, she went along with appellant's wishes for a few minutes by sitting on the bed and touching him. But she did not want him to touch her. When appellant did attempt to touch her by reaching to unfasten her pants, J.H. left the bedroom, retrieved and put on her shoes, grabbed her purse, and went to the door to leave. Transcript of trial (T.) 201-205. J.H. testified that at this point she was panicked and scared. T. 206-207. J.H. testified she managed to unlock the horizontal door guard and was fumbling with the operation of the deadbolt when appellant appeared, now fully naked, and pushed his way in between her and the door.

Appellant's actions forced J.H. take a step backward and blocked her exit from the room. T. 207. Appellant then grabbed J.H by the biceps, pushed her backwards into the room and up against the edge of the kitchen table. T. 208, 211-212. Once appellant had J.H. pinned against the table, he forced her legs apart with his legs. J.H. told appellant "No. I can't. Please stop," and "I can't do this." T. 213-214. Instead of stopping, appellant pushed his hand under J.H.'s shirt and bra and groped her bare breasts while grinding his penis against her legs and kissing her neck and face. T. 215-216. J.H. wiggled her way free of appellant to escape his assault.

{¶ 29} J.H. went to the door again, only to have appellant block her exit again. This time, however, appellant told J.H. to "fix herself" as he straightened her shirt and fixed her hair. He told her she needed to "look right." He further told her "[y]ou can't say anything. I'm serious. This is my life we're talking about here." T 218-220. Because she needed him to believe everything was alright, J.H. responded there was no problem and gave appellant a peck on the lips. Appellant then permitted J.H. to leave. T. 220-221.

{¶ 30} DNA evidence corroborated J.H.'s testimony as appellant's DNA was found on the inside cups of J.H.'s bra, inside the front of her shirt, and the front outside of her pants. State' exhibit 31.

Appellant's Testimony

{¶ 31} Appellant testified he and J.H. were mutually kissing and touching each other while they were both in the bedroom. 707- 711. Appellant further testified that at some point J.H. stated she needed to leave and appellant stated he understood. According to appellant, he stayed in bed as J.H. left the hotel room. Appellant testified he

never left the bedroom after J.H. decided she wanted to leave and never prevented J.H. from leaving the hotel room. T. 712.

Analysis

{¶ 32} Appellant first argues the state failed to establish the necessary culpable mental state, specifically that he acted with purpose. A person acts with purpose "when it is his specific intention to cause a certain result." R.C. 2901.22(A). Intent may be inferred from all the surrounding circumstances.

{¶ 33} Based on the testimony of J.H., the jury could reasonably conclude appellant's conduct was purposeful. J.H. testified appellant inserted himself in between the door and J.H. to prevent her from leaving, pushed her back into the living room, and then sexually assaulted her. We find the state presented sufficient evidence to prove the appellant acted purposefully.

{¶ 34} Appellant next argues the state failed to prove he compelled J.H. to submit to sexual contact by force or threat of force. But blocking J.H.'s exit from the room, grabbing J.H. and pushing her back into the room, pinning her against a table and continuing his behavior after being asked to stop constitutes not one, but three instances of force. *State v. Staab*, 9th Dist. Lorain No. 04CA008612, 2005-Ohio-3323, ¶ 9 (blocking the only means of escape constitutes force); *State v. Bey*, 6th Dist. No. L-19-1099, 2020-Ohio-4601, ¶ 21 (holding or repositioning a victim's body and/or removing or displacing a victim's clothing constitutes force); *State v. Thomas,* 8th Dist. Cuyahoga No. 56652, 1990 WL 28831 (March 15, 1990) (continued sexual contact after being asked to stop or being told no constitutes force).

{¶ 35} We note appellant bases his arguments in part on the fact that consensual flirting, kissing, and fondling took place earlier in the evening and the fact that J.H. voluntarily went to bars with appellant and to appellant's hotel room. These facts are not lost on us. However, those facts are relevant to J.H.'s credibility, not the state's burden of production.

{¶ 36} Appellant also supports his argument by asking this court to find this matter analogous to *State v. Wine*, 3d Dist. Auglaize No. 2-12-01, 2012-Ohio-2837 and *State v. Riggs*, 10th Dist. Franklin Nos. 04AP-1279, 04AP-1280, 2005-Ohio-5244.

{¶ 37} In *Wine*, the defendant had sexual contact with the victim when the victim was asleep. *Wine* ¶ 10. The Third District reversed Wine's conviction for gross sexual imposition finding the victim's will was not overcome by force or threat of force. *Id.* at ¶ 47. In *Riggs*, the defendant reached out and touched the victim's breast. The victim said "no" and walked away. *Riggs* ¶14. The Tenth District reversed Riggs' conviction for gross sexual imposition finding the element of force or threat of force lacking as Riggs did not threaten or restrain the victim, nor reposition her body or clothing. *Id.* 24.

{¶ 38} There is simply no comparable situation here. J.H. was awake during the assault and appellant exerted force upon J.H. in order to grope her breasts. We therefore find the state produced sufficient evidence to prove appellant acted with purpose to compel J.H. to engage in sexual contact with appellant by force.

{¶ 39} We additionally find this is not an exceptional case in which the evidence weighs heavily against a conviction. The jury here was presented with two conflicting versions of events. But because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of

particular witnesses, an appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, quoting *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012-Ohio-1282, ¶ 24.

{¶ 40} The jury in the instant matter heard and witnessed testimony from both J.H. and appellant. We find no evidence in the record to support a finding that the jury lost its way in finding J.H. credible and discounting appellant's testimony. To the contrary, the jury appears to have given the matter the attention it was due. The jury deliberated for eight hours over two days and acquitted appellant of count two of the indictment. Accordingly, we find appellant's conviction is not against the manifest weight of the evidence.

{¶ 41} The first and second assignments of error are overruled.

III

{¶ 42} In his final assignment of error, appellant argues the trial court abused its discretion by denying his request to give a jury instruction regarding force consistent with *State v. Dye*, 82 Ohio St.3d 323, 1998-Ohio-234, 695 N.E.2d 763 (1988). We disagree.

{¶ 43} When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case. *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989). The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Jury instructions must be reviewed as a whole.  *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988).

{¶ 44} Appellant requested a "*Dye*" instruction in regard to force. (*State v. Dye*, 82 Ohio St.3d 323, 327, 1998-Ohio-234, 695 N.E.2d 763). Specifically, appellant requested the jury be instructed that the state must prove beyond a reasonable doubt that he purposely compelled J.H. to submit by using some amount of force beyond that force inherent in the sexual contact itself.

{¶ 45} The state objected to this instruction. T. 540-541, 556-562. After hearing argument from both parties, the trial court found while the instruction was a correct statement of law, it was nonetheless inapplicable to the facts of the case and denied the instruction. T. 562, 676, 744. The jury was provided with the standard Ohio Jury Instructions definition of force as being "any violence, compulsion or constraint physically exerted on a person or thing." T. 816.

{¶ 46} We too find the requested jury instruction inapplicable to the facts of this case. A *Dye* instruction for a gross sexual imposition charge pursuant to R.C. 2907.05(A)(1) could be appropriate in cases such as *Wine* and *Riggs,* supra wherein the victim was sleeping when the sexual contact took place or where the touching was in

passing. But there was no similar circumstance here. Appellant never advanced any similar theory at trial and in fact denied any contact at all took place after J.H. left the bedroom. Conversely, J.H. was unwavering as to what took place as she attempted to leave appellant's hotel room. We therefore find the trial court did not abuse its discretion by denying appellant's request for a *Dye* instruction.

{¶ 47} The final assignment of error is overruled.

{¶ 48} The judgment of conviction and sentence of the Delaware County Court of Common Pleas is affirmed.

By Wise, Earle, P.J.

Gwin, J. and

Wise, J., J. concur.

EEW/rw